IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GLOBAL FIBRES, INC. )<br>)<br>        Plaintiff, )<br>)<br>) Civil Action No: 3:10-CV-00673 (JRS)<br>v. )<br>)<br>FRANK PARSONS, INC., *et al.*, )<br>)<br>        Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO TRANSFER VENUE TO THE DISTRICT OF MARYLAND**

Plaintiff Global Fibres, Inc. ("Global"), by counsel, submits this memorandum opposing the Motion to Dismiss, or in the Alternative, to Transfer Venue to the District of Maryland, of Defendants Frank Parsons, Inc.'s ("Frank Parsons"), J. Michael Lane's ("Lane"), and Frank Curran [Docket No. 14] (the "Motion").

**PRELIMINARY STATEMENT**

Defendants contend that this Court should dismiss this action in its entirety for improper venue, or, in the alternative, transfer venue to the District of Maryland. These arguments ignore, however, that a substantial part of the parties' ongoing contractual relationship giving rise to Global's claims occurred in this District. Over the past four years, Global delivered 150 shipments of paper goods to Frank Parsons' Richmond, Virginia warehouse. *See* Declaration of Sara Choi ("Choi Declaration") ¶ 3 (attached hereto as **Exhibit A**). These shipments totaled more than $400,000.00 worth of paper products. *Id.* at ¶ 4. Therefore, venue is proper in this

1

Court. Moreover, Defendants have failed to show that this District is so inconvenient that Global's choice of forum should be overridden.

In addition, Defendants seek to dismiss Count V of Global's Complaint asserting a claim of conversion against Lane and Curran, contending that a conversion claim cannot arise out of a breach of contract. Contrary to Defendants' assertions, however, Maryland courts have routinely upheld recoveries for conversion arising out of contractual relationships, and the Complaint in this case states facts sufficient to support every element of a conversion claim against Lane and Curran.

Finally, Lane and Curran argue that the Court lacks personal jurisdiction over them. This argument ignores facts contained in the Complaint demonstrating that Lane and Curran made decisions affecting the disposition of inventory, including inventory delivered by Global to Frank Parsons' Richmond, Virginia warehouse. This activity not only led directly to Global's damages in this case, but it also establishes the business activity and minimum contacts necessary to satisfy the requirements of Virginia's Long-Arm Statute and constitutional due process. For these reasons, which are explained more fully below, Defendants' Motion should be denied.

## SUMMARY OF FACTS

The Complaint alleges that between June 2006 and August 2010, a course of dealing developed between Global and Frank Parsons "during which their relationship conformed to the terms of a Seller Owner Inventory Agreement . . . ." Complaint ¶ 9. Global made deliveries of paper goods to Frank Parsons' warehouse in Richmond, Virginia and retained ownership of these goods until either Frank Parsons "sold the paper or 150 days elapsed." *Id*. ¶¶ 10-11.

Frank Parsons breached this ongoing contractual relationship, giving rise to considerable damages. *See id*. ¶¶ 14-16. Further, the Complaint states that Frank Parsons, "under the

direction of Lane and Curran," took delivery of and resold over $285,000.00 worth of paper goods while Lane and Curran knew that Frank Parsons could not meet its contractual obligation to pay Global for the resold goods. *Id*. ¶ 36. Under the terms of the Seller Owner Inventory Agreement, Global owned this property at the time it was resold. *Id*. ¶ 11.

Indeed, the contractual relationship Frank Parsons breached giving rise to this action included extensive and persistent commercial activity in this District. As part of its agreement with Frank Parsons, Global shipped $416,570.90 worth of paper goods to Frank Parsons' warehouse in Richmond, Virginia. *See* Choi Declaration ¶ 4. The goods were shipped between September 2007 and June 2010, over the course of 150 shipments. *Id*. ¶ 3. Defendants even admit that some of the goods for which Defendants have failed to pay Global were delivered to its Richmond warehouse during this time. *See* Motion, pp. 5-7.

## ARGUMENT

**I. VENUE IN THIS COURT IS PROPER UNDER 28 U.S.C. § 1391(A)(2) AS A "SUBSTANTIAL PART OF THE EVENTS OR OMISSIONS GIVING RISE TO THE CLAIM OCCURRED" IN THIS DISTRICT.**

This Court is a proper venue for this action because a substantial part of the events giving rise to Global's claim occurred in this District. Under 28 U.S.C. § 1391(a)(2), "[a] civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought only in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." As Defendants acknowledge, the Fourth Circuit Court of Appeals has made clear that when "determining whether events or omissions are sufficiently substantial to support venue" under 1391(a)(2), "a court should not focus only on those matters that are in dispute or that directly led to the filing of the action." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004); Motion, p. 4.

3

Instead, this Court "should review 'the entire sequence of events underlying the claim.'" *Id*. (quoting *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)).

This Court's decision in *Prod. Group Int'l v. Goldman*, 337 F. Supp. 2d 788 (E.D. Va. 2004), illustrates the application of *Mitrano*. In *Goldman*, the plaintiff corporation sued a Florida resident and former employee for breaching his employee contract. According to the complaint, the defendant resigned, began working for a competitor corporation based in Florida, and then allegedly diverted the business of one of the plaintiff's clients. Citing *Mitrano*, the Court held that the Eastern District of Virginia was a proper venue for the breach of contract action because (1) the defendant travelled to Virginia on business on three occasions over a period of nearly six years, and (2) the defendant assisted the plaintiff's Virginia-based employees "via teleconference and email" to pitch the client. *Id*. at 798-99.

Similarly, in *Reynolds Foil Inc. v. Pai*, 2010 U.S. Dist. LEXIS 28473 (E.D. Va. Mar. 25, 2010), this Court recently held that while the events that directly gave rise to the plaintiff's claim occurred in other jurisdictions, venue was proper because of the defendants "series of business contacts" in this District. *Id*. at *18-19. The defendant's only business contacts in Virginia were her acceptance of employment with a Virginia-based company and the fact that she spent "23 percent of her total work days . . . in Richmond, Virginia." *Id*. at *8.

Defendants cite *Power Paragon, Inc. v. Precision Technology USA, Inc.*, 605 F. Supp.2d 722 (E.D. Va. 2008), to support the notion that venue is not proper in this District. *See* Motion, pp. 4-5. Defendants ignore, however, that one of the facts upon which the Court in *Power Paragon* relied in finding venue improper in the Eastern District was that "both *delivery* and manufacture of the Product occurred outside the Eastern District . . . ." *Id*. at 726 (emphasis added). Indeed, the Court explained that "the procurement, fabrication, testing, *and delivery* of

the Product constitute the events that allegedly entitle payment sought under the contract. Despite being a 'substantial part,' these events did not occur in this judicial district . . . ." *Id*. at 727 (emphasis added).

Unlike in *Power Paragon*, and similar to the facts in *Goldman* and *Reynolds Foil*, Defendants have ordered a substantial amount of product from Global, a portion of which was delivered in Richmond. Indeed, Defendants concede that payment for a portion of this product is at issue in this case. Motion, pp. 5-6. Global's substantial volume of deliveries (150 shipments worth $416,570.90) to Defendants' Richmond warehouse establishes that venue is proper in this District.

## II. GLOBAL IS ENTITLED TO MAINTAIN THIS ACTION IN THE EASTERN DISTRICT OF VIRGINIA.

### A. Global's choice of forum is entitled to substantial weight.

Global's decision to file suit in this District is entitled to "substantial weight, unless [it] chooses a foreign forum and the cause of action bears little or no relation to that forum." *JTH Tax, Inc. v. Lee*, 482 F. Supp.2d 731, 736 (E.D. Va. 2007) (internal citation and quotations omitted). Defendants bear the substantial burden of proving that the balance of convenience factors strongly favors transfer. *Id*.

In arguing that Global's choice of venue should be given no weight, Defendants rely solely on decisions in the patent and trademark context that discount sales activity as a relevant metric in determining deference from the case's relation to the forum. *See* Motion, p. 7 (citing *Finmeccanica S.P.A. v. Gen. Motors Corp.*, 2007 WL 4143074, at *4 (E.D. Va. Nov. 19, 2007) (dispute over patent to motor technology); *Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 568 (E.D. Va. 2005) (dispute over patent to "method for optimizing creatine uptake"); *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 586 (E.D. Va. 1992)

5

(dispute over patent to construction and method of producing "Foldable Curtain Screen or Blind")). However, as this Court explained in *USA Laboratories, Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, 2009 U.S. Dist. LEXIS 37797 (E.D. Va. May 4, 2009), patent infringement cases are inapposite to venue transfer analyses in other contexts because "in patent infringement cases, the preferred forum is generally the center of the accused activity," which "is typically where the infringing product was designed or manufactured, particularly since a claim for patent infringement arises upon the making of the accused product, without the need for an infringing sale . . . ." *Id.* at *7.

This case differs markedly from patent cases because without Global having made deliveries under the contracts, many of which went to Frank Parsons' warehouse in Richmond, Global would not have performed on the very contracts that serve as the basis for its claims. Indeed, far from contending that the sales activity in this case is wholly irrelevant to Global's claims (as is the case in the patent context), Defendants admit that some of goods for which Defendants have failed to pay Global were delivered to its Richmond warehouse. *See* Motion, p. 7. Therefore, Global's choice of forum is entitled to substantial deference.

> **B.     Defendants fail to meet their substantial burden to establish that the balance of convenience factors strongly favors transfer.**

Defendants bear the burden of proving that the balance of convenience factors with regards to parties and witnesses "is strongly in favor of the forum to which transfer is sought." *JTH Tax*, 482 F. Supp.2d at 736 (internal citation and quotations omitted). This burden exists even if the chosen forum is not the plaintiff's home forum. *See Mullins v. Equifax Info. Servs., LLC*, 2006 U.S. Dist. LEXIS 24650, at *17 (E.D. Va. April 28, 2006).

1.  **Convenience of the Parties.**

Defendants fail to establish that the convenience of the parties dictates a transfer to the District of Maryland. While transfer to the District of Maryland would be more convenient for Defendants, they fail to establish how conducting this case in this District inconveniences them to the extent that Global's choice of forum should be overridden.

Defendants make two arguments in support of their contention that transfer to the District of Maryland is proper: (1) that Defendants all reside nearer to the federal courthouse in Baltimore, Maryland than they do to Richmond, Virginia, and (2) that transfer to Maryland "would be more convenient for Global as well, as Global's business location is much closer to Baltimore than it is to Richmond." Declaration of J. Michael Lane in Support of Defendants' Motion at 15 (hereinafter "Lane Declaration at ___"); Motion, p. 9. Neither of these arguments is sufficient to overcome Global's choice of forum.

First, despite the relatively more convenient location of an adjacent district, Defendants have failed to explain why Global's chosen forum is inconvenient. *See Wellington Computer Graphics, Inc. v. Modell*, 315 F. Supp. 24, 28 (S.D.N.Y. 1970) (denying transfer from New York to New Jersey when movant demonstrated that New Jersey was more convenient, but failed to show that New York was sufficiently inconvenient); *De Moraes v. American Export Isbrandtsen Lines, Inc.*, 289 F. Supp. 861, 862 (E.D. Pa. 1968) ("the distance between the City of New York and Philadelphia [nearly 100 miles] is not so great as to cause defendant any serious inconvenience in trying the case in Philadelphia"); *Bevil v. Smit Americas, Inc.*, 883 F. Supp. 168, 171 (S.D. Tex. 1995) (holding that movant failed to demonstrate sufficient inconvenience to warrant transfer to a court 50 miles away).

Second, Defendants cannot rely on the argument that Maryland is a more convenient

7

forum for Global. *See Mullins*, 2006 U.S. Dist. LEXIS 24650, at *20 ("It is not enough for defendant to argue only that plaintiff's choice of forum is inconvenient for the plaintiff"). In *American Can Co. v. Crown Cork & Seal Co., Inc.,* 433 F. Supp. 333, 338 (E.D. Wis. 1977), and *James v. Norfolk & Western Ry. Co.,* 430 F. Supp. 1317, 1319 (S.D. Ohio 1976), two cases Judge Payne cited with approval in *Mullins*, the courts held that "[t]he defendant cannot assert plaintiff's inconvenience in support of a motion to transfer." *American Can Co.*, 433 F.Supp. at 338; *James v. Norfolk & Western Ry. Co.*, 430 F.Supp. at 1319; *see also Mullins*, 2006 U.S. Dist. LEXIS 24650, at *20.

### 2. Witness convenience and access.

Defendants similarly fail to establish that witness convenience and access would be hindered sufficiently to overcome Global's choice of forum. First, they contend that "all of the witnesses who may be called to testify on behalf of the Defendants work and reside in the District of Maryland. Motion, p. 8 (citing Lane Declaration at ¶¶ 13-15). All of the referenced witnesses, however, are employees of Frank Parsons. *See* Lane Declaration at ¶ 14 (listing the Vice President of Purchasing, Chief Financial Officer, Comptroller, and Warehouse Manager of Frank Parsons). The inconvenience to these witnesses "is not afforded the same weight as the inconvenience to non-party witnesses." *See USA Laboratories*, 2009 U.S. Dist. LEXIS 37797 at *11-12 (citing *Mullins*, 2006 U.S. Dist. LEXIS 24650 at *23). Hence, Defendants fail to show that litigating in this District would inconvenience these witnesses such that the Court should disregard Global's choice of forum.

Defendants also claim that Global's witnesses would find the District of Maryland more convenient. *See* Motion, p. 8. Defendants cannot rely on the alleged inconvenience to Global's witnesses, for whom Global will pay travel costs and provide time off, as a basis to overturn

8

Global's choice of forum. *See Mullins*, 2006 U.S. Dist. LEXIS 24650, at *20. In sum, Defendants have failed to meet their substantial burden of demonstrating that these convenience factors "strongly favor" transfer to Maryland.

### 3. Interests of Justice.

In deciding the interests of justice factor, courts may consider the dockets of each forum court. *JTH Tax*, 482 F. Supp.2d at 738. Although a transfer decision cannot be based solely on docket considerations, this factor, when established, is part of the balance of the convenience factors. *Id.* at 739. Here, the docket timing is relevant to the determination of convenience. In 2009, the District of Maryland had a median time of 26.4 months from filing a civil case to trial. 2009 FEDERAL COURT MANAGEMENT STATISTICS, http://www.uscourts.gov/viewer.aspx?doc=/cgi-bin/cmsd2009.pl (December 12, 2010), printouts of the website attached herein as **Exhibit B**. However, the Eastern District of Virginia had a median time of 10.2 months from filing to trial in a civil case. *Id.* The disparity is over 2.5 times longer between filing and trial in Maryland. Therefore, the interests of justice weigh against transferring the case to Maryland. *See Intranexus, Inc. v. Siemens Med. Solutions Health Servs. Corp.*, 227 F. Supp. 2d 581, 585 (E.D. Va. 2002) ("A more speedy resolution of this case in the Eastern District of Virginia would be in the interest of justice. Therefore, this factor . . . favors retaining venue").

Defendants rely on only one factor – "familiarity with applicable law" – to demonstrate that transfer to Maryland would serve the interests of justice. *See* Motion, p. 9. Global's breach of contract and conversion claims, however, are not complex, and therefore the forum's familiarity with state law should be given little, if any, weight. *See Intranexus, Inc.*, 227 F. Supp. 2d. at 585 ("the Court finds that familiarizing itself with Pennsylvania law does not

9

present a problem in this case. The nature of federal practice requires the Court to routinely interpret laws from jurisdictions across the nation"); *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (noting the "relative simplicity of the legal issues involved" in common law fraud and breach of contract claims before affirming the trial court's decision not to transfer); *S-Fer Int'l v. Paladion Partners*, 906 F. Supp. 211, 215 (S.D.N.Y. 1995) ("even if California law governs this dispute, the legal issues involve relatively unexceptional questions of contract and fraud"). Defendants' argument that the interests of justice would be served by transfer is therefore unavailing, and certainly does not rise to meet their substantial burden.

### III. COUNT V OF GLOBAL'S COMPLAINT STATES A VALID CLAIM OF CONVERSION AGAINST LANE AND CURRAN.

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of a complaint; it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Vianix Delaware, LLC v. Nuance Communications, Inc.*, 2009 U.S. Dist. LEXIS 58852, *4-5 (E.D.Va. June 16, 2009) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). In deciding a motion to dismiss, all factual allegations of the complaint are taken as true, *Erickson v. Pardus*, 551 U.S. 89 (2007), as well as any facts that can be proved consistent with those allegations. *Hishon v. King &* Spalding, 467 U.S. 69, 73 (1984); *Eastern Shore Markets, Inc. v. J.D. Assocs., Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000). In addition, "the complaint is to be liberally construed in favor of plaintiff," *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), and "a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *United States v. Haliburton Co.*, 2009 U.S. Dist. LEXIS 63649, *13 (E.D.Va. July 23, 2009) (citing Fed. R. Civ. P. 8). A Rule 12(b)(6) motion should not be granted unless, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and

drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove *any set of facts* in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (emphasis added); *see also America Online, Inc. v. GreatDeals.Net*, 49 F. Supp. 2d 851, 854 (E.D. Va. 1999).

Defendants move to dismiss only Count V, which states a valid claim for conversion. In Maryland, "[c]onversion is an intentional tort, consisting of two elements, a physical act combined with a certain state of mind." *Darcar Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 835 (Md. 2004). More specifically, "[t]he gist of a conversion claim is . . . the wrongful deprivation of a person of property to which he is entitled . . . . Besides the act of exerting unlawful control . . . a defendant liable for conversion must have 'an intent to exercise dominion and control over the goods which is in fact inconsistent with the plaintiff's rights.'" *Id*. at 835-36. Importantly, "all who aid, command, assist, or participate in the commission of such unlawful acts are liable." *Merchants' Nat'l Bank v. Williams*, 72 A. 1114, 1117 (Md. 1909).

The Complaint states facts sufficient to state a claim for conversion against Lane and Curran under Maryland law. First, "Global retained title to inventory in the Parsons warehouse until the inventory had been sold or the passage of 150 days." Complaint at ¶ 35. Second, Lane and Curran directed Frank Parsons to sell a portion of the delivered paper goods knowing that Parsons would not fulfill its contractual obligations. *Id*. at ¶ 36. Finally, the sale of the paper goods to a third party without requisite payment under the contract "has deprived Global of its right to the possession and use of the paper." *Id*. at ¶ 37. In short, the Complaint states that Lane, Curran, and Frank Parsons intentionally deprived Global of property that Global owned, knowing that they would be unable to provide any compensation to Global for the paper.

Defendants incorrectly contend that a claim of conversion cannot arise out of a breach of contract. *See* Motion, p. 10. The Maryland Court of Appeals has stated, however, that "[i]n Maryland, it is well settled that torts can arise out of contractual relationships." *K & K Management, Inc. v. Lee*, 557 A.2d 965, 983 (Md. 1989) (citing *Wedeman v. City Chevrolet Co.*, 366 A.2d 7 (Md. 1976). Indeed, the Court in *K & K Management* noted that the claim of conversion in that case was "a perfect example of a tort arising out of contract." *Id*.

The allegations made in this case closely mirror the facts of *Bacon & Assocs. v. Rolly Tasker Sails (Thailand) Co.*, 841 A.2d 53 (Md. Ct. App. 2004), in which a Maryland court addressed a verdict stemming from allegations of breach of contract, conversion, and fraud. In *Bacon & Assocs.*, a Maryland retailer entered into an agreement with a foreign sail maker to sell its sails on consignment. As part of the agreement, once the retailer sold a sail, he would wait to ensure the customer did not return the sail, then issued a check representing the net invoice price to the sail maker. Over time, however, the retailer stopped making the necessary payments under their agreement, and the sail maker filed suit alleging, among other claims, both breach of contract and conversion. The jury found in favor of the plaintiff on both counts, assessing monetary damages. The Court affirmed the jury's verdict, holding that "[t]he measure of damages in an action for conversion is the fair market value of the personalty at the time of the conversion, plus interest thereon to the date of the verdict . . . . Here the evidence supported a value of the converted sales in excess of the jury's verdict." *Id*. at 62.

Defendants' reliance on *Fink v. Pohlman*, 582 A.2d 539 (Md. Ct. App. 1990), is misplaced. *Fink* dealt with the question of "whether mere nonfeasance or neglect, or mere failure to perform under a contract will support an action in conversion . . . ." *Id*. at 542. Global's allegations in its Complaint, however, rise above the level of "mere nonfeasance or

neglect"; Defendants knew that Frank Parsons could not perform its end of the bargain and nonetheless sold what was, at the time, Global's property. Just as in *Bacon & Assocs.*, these facts constitute both breach of contract and conversion under Maryland law.

### IV. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS LANE AND CURRAN.

The inquiry into personal jurisdiction is a two-step process: (1) whether the state's long-arm statute extends jurisdiction to the non-resident defendant, and (2) whether that statutory assertion comports with the Due Process Clause of the Fourteenth Amendment. *See Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311 (4th Cir. 1982). Both parts of this inquiry are satisfied in this case.

The purpose of Virginia's long-arm statute "is to extend jurisdiction to the extent permissible under the due process clause." *English & Smith v. Metzger*, 901 F.2d 36 (4th Cir. 1990) (internal citations omitted). The statute provides:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.

Va. Code § 8.01-328.1(A)(4). In this case, the Complaint establishes (1) that Global delivered paper goods under the contract to Frank Parsons' warehouse in Richmond, Virginia, and that (2) Lane, Curran, and Frank Parsons sold $285,280.06 of the paper Global delivered. *See* Complaint ¶¶ 10, 36. Indeed, Defendants admit that a portion "of the amount in dispute" in this case was shipped to Frank Parsons' Richmond facility. *See* Motion, p. 2. The Complaint, therefore, alleges that Lane and Curran caused tortious injury to Global in Virginia through their acts outside of Virginia. These allegations also establish that Lane and Curran conducted business

activities in Virginia, making decisions on the sale of warehouse inventory, including the inventory at Frank Parsons' Richmond, Virginia warehouse. Complaint ¶ 36. It was these decisions that led directly to Global's conversion claim. Thus, the requirements of Virginia Code § 8.01-328.1(A)(4) are fulfilled in this case.

This business activity also satisfies the constitutional requirements for personal jurisdiction. This inquiry requires "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). This analysis addresses whether the "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). As the Fourth Circuit has explained, "[i]n determining whether specific jurisdiction exists, we traditionally ask (1) whether the defendant purposefully availed itself of the privileges of conducting activities in the forum state, (2) whether the plaintiff's claim arises out of the defendant's forum-related activities, and (3) whether the exercise of personal jurisdiction over the defendant would be constitutionally reasonable." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002).

The Complaint states that Frank Parsons, at the direction of Lane and Curran, sold paper goods to third parties knowing that Frank Parsons could not pay Global under their contract. Complaint ¶ 36. This decision of how to dispose of warehouse inventory, including inventory at the warehouse in Richmond, Virginia, is the sort of purposeful activity in the forum state necessary to withstand constitutional scrutiny. Further, Global's claim arises directly out of such inventory disposition decisions. Finally, because Defendants disposed of Global's property, a portion of which was situated in Richmond, Virginia, with knowledge that Frank Parsons would

14

be unable to perform its side of the contract, subjecting Defendants to suit in this jurisdiction is reasonable.

The allegations contained in Global's Complaint meet both the requirements of Virginia's Long-Arm Statute and the constitutional threshold for personal jurisdiction set forth in *International Shoe*. Thus, this Court has jurisdiction over Lane and Curran.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion.

.

/s/ Michael E. Lacy
Michael E. Lacy, VSB No. 48477
michael.lacy@troutmansanders.com
TROUTMAN SANDERS LLP
Post Office Box 1122
Richmond, Virginia  23218-1122
(804) 697-1326 (telephone)
(804) 698-6061 (facsimile)

Counsel for Plaintiff Global Fibres, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this **17th** day of December, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

**Gilbert David Dean, II, Esquire**
Cole Schotz Meisel Forman & Leonard PA
300 E. Lombard St.
Suite 2000
Baltimore, MD 21202
410-528-2972
Fax: 410-230-0667
Email: ddean@coleschotz.com

/s/ Michael E. Lacy
Michael E. Lacy, VSB No. 48477
michael.lacy@troutmansanders.com
TROUTMAN SANDERS LLP
Post Office Box 1122
Richmond, Virginia 23218-1122
(804) 697-1326 (telephone)
(804) 698-6061 (facsimile)

Counsel for Plaintiff Global Fibres, Inc.

2007279v2