UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

GLOBAL FIBRES, INC.,

                              Plaintiff,

    v.                                      Action No. 3:10−CV−673

FRANK PARSONS, INC., J. MICHAEL
LANE, and FRANK CURRAN,

                              Defendants.

MEMORANDUM OPINION

       This matter comes before the Court on defendants' Motion to Dismiss or Transfer Venue. Plaintiff Global Fibres, Inc. ("Global Fibres"), sued Frank Parsons, Inc. ("Frank Parsons"), on various theories flowing from allegations that Frank Parsons was deficient on payments on a paper delivery account. This case is now stayed as to Frank Parsons, because the corporation is in bankruptcy proceedings. The Complaint includes a conversion claim against Frank Parsons and two Frank Parsons executives, J. Michael Lane and Frank Curran. Lane and Curran urge the Court to transfer the case or dismiss the claim for lack of personal jurisdiction. The Court grants the Motion on the latter basis.

       Global Fibres allegedly began distributing paper to Frank Parsons in June 2006. The two corporations entered into a Seller Owned Inventory Agreement ("SOI Agreement"). Under the SOI Agreement, Global Fibres shipped paper to Frank Parsons warehouses, one of which was in Richmond, in response to Frank Parsons purchase orders. Global Fibres owned any paper it shipped until Frank Parsons either sold the paper or possessed it for 150 days. The SOI

1

Agreement charged Frank Parsons with sending Global Fibres a monthly Usage Report, which documented the amount of paper Frank Parsons sold or held in inventory for 150 days. Under the SOI Agreement, Global Fibres shipped over $450,000 worth of paper to the Frank Parsons warehouse in Richmond.

The Complaint alleges Frank Parsons retains an outstanding balance on the SOI Agreement. Paper delivered to the Frank Parsons warehouse in Richmond accounts for some, but not all, of this alleged balance. Global Fibres claims Curran and Lane converted Global Fibres's property by participating in the sale of unpaid-for paper. Lane and Curran both reside and work in Maryland. Lane serves as Frank Parsons's chief executive officer, and Curran as its president.

Lane and Curran contend this Court lacks jurisdiction over them. Upon a challenge to a court's personal jurisdiction, the parties raise a question of fact for the judge, to be decided by a preponderance of the evidence. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). *See* Fed. R. Civ. P. 12(b)(2). The plaintiff carries the burden of proof. *Mylan Labs.*, 2 F.3d at 59-60. The court must draw all reasonable fact inferences in the plaintiff's favor. *Id.*

Global Fibres must prove the Court's jurisdiction over Lane and Curran under both Virginia's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311 (4th Cir. 1982). The Virginia long-arm statute permits a court to assert personal jurisdiction over a claim "arising from the person's":

> (1) Transacting any business in this Commonwealth;
> (2) Contracting to supply services . . . in this Commonwealth;
> (3) Causing tortious injury by an act or omission in this Commonwealth; [or]
> (4) Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth[.]

Va. Code § 8.01-328.1 (2009). Virginia's long-arm statute extends the boundaries of personal

2

jurisdiction as widely as the Due Process Clause of the Fourteenth Amendment allows. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). Virginia is a "single act" state, such that a single act of transacting business can permit a court to exercise personal jurisdiction. *D'Addario v. Geller*, 264 F.Supp.2d 367, 379 (E.D. Va. 2003).

Under the Fourteenth Amendment, a court can only assert jurisdiction over a defendant if the defendant has minimum contacts with the forum and jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). *See Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F.Supp.2d 545, 549 (E.D. Va. 2004). A plaintiff must demonstrate that the non-resident defendant "purposefully availed" himself of the privileges of the forum's laws, so that the non-resident defendant has warning that his activities may subject him to litigation in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Peanut Corp.*, 696 F.2d at 314. A court also must conclude that the plaintiff's claims arise out of the activities by which he purposely availed himself of the laws of the forum. *Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004) (citation omitted).

Even though they are officers in a corporation over which this Court may possess jurisdiction, Global Fibres must prove that Lane and Curran individually established jurisdictional contacts with the Commonwealth. A corporation's contacts with the forum state are not reflexively attributed to a corporate agent for jurisdictional purposes. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 177 (4th Cir. 2002). While a defendant is not immune from a court's jurisdiction simply because he makes contacts with the forum state on behalf of the corporation, a court must decide whether a corporate agent himself established sufficient contacts with the Commonwealth. *Id.* It is irrelevant whether the agent established contacts in his corporate or personal capacity.

*D'Addario*, 264 F.Supp.2d at 380. Instead, the relevant inquiry is simply whether the defendant had minimum contacts with the Commonwealth, "whatever role he may have occupied[.]" *Id.* (quoting *Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052, 1058 (4th Cir. 1983)).

Global Fibres has not proven that Lane and Curran individually availed themselves to the Virginia forum. The Complaint alleges Frank Parsons and Global Fibres entered the SOI Agreement, pursuant to which Global Fibres delivered paper to a Frank Parsons warehouse in Richmond. The Complaint does not, however, make specific allegations about Lane's and Curran's roles in creating Frank Parsons's contacts with Virginia. It merely alleges Global Fibres sold over $285,000 worth of unpaid-for paper—only $19,500 of which was ever housed in Richmond—"under [the] direction" of Lane and Curran. (Compl. ¶ 36.) Nowhere does Global Fibres allege or prove, for example, Lane and Curran communicated with Global Fibres personnel in Virginia or negotiated the SOI Agreement with Global Fibres personnel in Virginia.

Global Fibres contends the Court has jurisdiction over Lane and Curran on the basis of Frank Parsons's business dealings with Global Fibres in Virginia. According to Global Fibres, the allegations demonstrate (1) that Global Fibres delivered paper goods under the SOI Agreement to the Frank Parsons warehouse in Richmond, Virginia, and that (2) Lane, Curran, and Frank Parsons sold over $285,000 of the unpaid-for paper. From these facts, Global Fibres urges the Court to infer Lane and Curran decided "how to dispose of warehouse inventory, including inventory at the warehouse in Richmond," which would establish personal jurisdiction. (Pl.'s Mem. in Opp'n 14, Docket No. 15.)

Global Fibres's characterization of the facts rests on a fatal omission. Neither the Complaint nor Global Fibres's responsive memorandum includes a specific allegation or evidence that Lane and Curran individually decided "how to dispose of warehouse inventory[.]" (Pl.'s

4

Mem. in Opp'n 14.)  Lane is Frank Parsons's CEO, and Curran is its president.  A president and CEO of one company may decide how to dispose of warehouse inventory, while the president and CEO of another may not.  Based on the materials in front of the Court, it is impossible to determine which category Frank Parsons falls within.  While the Court is bound draw all reasonable inferences in favor of Global Fibres, the Court cannot draw any such inference in favor of Global Fibres when, based on the record, there are no facts giving rise to the inference that either defendant has any connection to this state.

Nor can the Court rely on its jurisdiction over Frank Parsons, assuming that it exists, to assume jurisdiction over Lane and Curran.  Global Fibres must show Lane and Curran themselves engaged in conduct in Virginia related to Frank Parsons's Virginia business for the Court to exercise jurisdiction.  *ePlus Tech., Inc.*, 313 F.3d at 177.  Neither the Complaint nor Global Fibres's briefing papers show that Lane and Curran personally transacted business in Virginia, contracted to supply goods in Virginia, caused tortious injury in Virginia, engaged in a persistent course of conduct in Virginia, or established minimum contacts with Virginia.  *See* Virginia Code § 8.01-328.1(1), (2), (3), and (4); *Reynolds & Reynolds Holdings*, 301 F.Supp.2d at 549.

Let the Clerk send a copy of this Order to all counsel of record.

It is SO ORDERED.

> _____/s/_____
> James R. Spencer
> Chief United States District Judge

ENTERED this   18th   day of May 2011